**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

MALIKIE INNOVATIONS LTD. and
KEY PATENT INNOVATIONS LTD.,

    **Plaintiffs,**

v.

TCL INDUSTRIES HOLDINGS CO., LTD.,
TCL ELECTRONICS HOLDINGS LTD.,
TCL TECHNOLOGY GROUP
CORPORATION, and TCL KING
ELECTRICAL APPLIANCES (HUIZHOU)
CO. LTD.,

    **Defendants.**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**CIVIL ACTION NO. _____**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement against Defendants TCL Industries Holdings Co., Ltd., TCL Electronics Holdings Ltd., TCL Technology Group Corporation, and TCL King Electrical Appliances (Huizhou) Co. Ltd. (collectively, "TCL" or "Defendants") and, in support, allege the following:

### PARTIES

1.      Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

1

2.      Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.      On information and belief, Defendant TCL Industries Holdings Co., Ltd. ("TCL Industries Holdings") is a Chinese corporation, with a place of business at 22nd Floor, TCL Technology Building, No. 17, Huifeng 3rd Road, Zhongkai High-Tech Zone Huizhou, Guangdong, China, 516006. *See AIST Solutions Co. v. TCL Industries Holdings Co.*, No. 5:25-cv-53-RWS-JBB, Dkt. 25 at 4 (E.D. Tex. filed Sept. 15, 2025).

4.      On information and belief, Defendant TCL Electronics Holdings Ltd. ("TCL Electronics") is a Cayman Islands exempted company, with a place of business at 5th Floor, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. *See AIST Solutions Co. v. TCL Industries Holdings Co.*, No. 5:25-cv-53-RWS-JBB, Dkt. 25 at 5 (E.D. Tex. filed Sept. 15, 2025). On information and belief, it is primary owned (>50% shares) by TCL Industries Holdings (Hong Kong) Ltd., which is 100% owned by TCL Industries Holdings. *See Cerence Operating Co. v. TCL Industries Holdings Co., Ltd.*, No. 2:25-cv-00758-JRG-RSP, Dkt. 9 (E.D. Tex. filed Oct. 24, 2025).

5.      On information and belief, Defendant TCL Technology Group Corp. (formerly known as TCL Corporation) ("TCL Technology") is a Chinese corporation, with a place of business at TCL Technology Building, No. 17, Huifeng Third Road, Zhongkai High-Tech Development Zone, Huizhou, Guangdong, P.R. China 516001.

6.      On information and belief, Defendant TCL King Electrical Appliances (Huizhou) Co. Ltd. ("TCL King") is a Chinese corporation, with a place of business at No. 78, Huifeng 4

Road, Zhongkai Development Zone, Huizhou, Guangdong, 516006, China. It is a subsidiary of TCL Electronics and its principal activities include the manufacture and sale of TV products and trading of components.[1]

7.    On information and belief, TCL is a leading manufacturer and seller of televisions and other consumer electronics worldwide, including in the United States, Texas, and this District.[2] On information and belief, each of the Defendants, directly or through intermediaries, designs, manufactures, markets, and/or sells the accused products (including TCL-branded televisions) worldwide, including in the United States; imports the accused products into the United States including Texas (including through a supply chain operated, controlled and/or involving each of the Defendants); and conducts business in the State of Texas and in this District, directly or through its agents.

8.    On information and belief, TCL and/or its employees or officers direct and/or control the actions of its direct and indirect subsidiaries. On information and belief, TCL and/or its employees or officers direct and/or control the actions of these entities by, for example, inducing and contributing to the actions complained of herein. TCL and its affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and/or using of the accused products in the United States, including in the State of Texas generally and this judicial district in particular.

9.    TCL and its affiliates regularly contract with customers regarding products made for or on behalf of those customers.

---

[1] *See* 2025 Annual Report at 144
(https://doc.irasia.com/listco/hk/tclelectronics/annual/2025/ar2025.pdf).
[2] *See, e.g.,* https://www.tcl.com/global/en/news/tcl-achieves-triple-top-1-rankings-in-global-tv-shipments-across-key-categories; https://www.tcl.com/global/en/about-tcl;
https://us.tcl.com/collections/smart-tv ("Where to Buy" identifying authorized retailers including in this district).

10.     TCL and its affiliates operate as a global unitary business venture, are an interrelated group of companies, and are jointly and severally liable for the acts of patent infringement alleged herein.[3]

11.     In its 2025 Annual Report ("2025 Report"),[4] TCL Electronics states that "it is a world-leading consumer electronics company that covers display, innovative and internet businesses," which includes making, importing, offering to sell, selling, and/or using of the accused products in the United States, including Texas and this judicial district. In the 2025 Report, TCL Electronics defines the "Group" to be "the Company and its subsidiaries collectively," where the "Company" refers to "TCL Electronics Holdings Limited, a company incorporated in the Cayman Islands with limited liability, the shares of which are listed on the Main Board of the Hong Kong Stock Exchange."

12.     The 2025 Report states that "[d]uring the year, the Group and its subsidiaries (collectively referred to as the 'Group') were mainly involved in the manufacture and sale of television ('TV') sets, smartphones, smart mobile and connective devices, smart commercial display and smart home products, all-category marketing, photovoltaic business and the provision of internet platform operating services." The 2025 Report further states that "[i]n 2025, the Group's large-sized display business achieved a rapid growth surpassing the industry" where "TCL TV's global shipment market share reached 14.7%, representing a year-on-year increase of 0.8 percentage points and consistently ranking second globally; global sales revenue market share reached 13.1%, representing a year-on-year increase of 0.7 percentage points and ranking among the top three globally."

---

[3] *See, e.g.*, https://electronics.tcl.com/en/about/overview.php;
https://www.tcl.com/global/en/news/tcl-achieves-triple-top-1-rankings-in-global-tv-shipments-across-key-categories.
[4] https://doc.irasia.com/listco/hk/tclelectronics/annual/2025/ar2025.pdf

13.    The 2025 Report also explains, for the "North American Market" including the United States, that:

> The Group continued to optimise its channel mix, actively increasing the proportion of sales through mid-to-high-end channels, driving growth in the proportion of mid-to-high-end products, and achieving dual improvement in revenue and ASP. In 2025, the revenue increased by 11.2% year-on-year. Shipment of 65-inch and above TCL TVs increased by 35.1% year-on-year, with its proportion increasing by 10.7 percentage points to 33.9%. Shipment of 75-inch and above TCL TVs increased by 45.7% year-on-year, with its proportion increasing by 5.9 percentage points to 16.1%. The effective implementation of the mid-to-high-end strategy in the North American market, combined with outstanding picture quality, innovative experience and a wider variety of product portfolio, drove an over 20% year-on-year increase in ASP. In 2025, TCL TV's retail sales volume market share in both the United States and Canada consistently ranked third.

14.    The 2025 Report discloses that "the Group has been pursuing and will continue to pursue synergies with multiple industries of TCL Industries Holdings Group and TCL Technology Group and leverage the advantages of an integrated industrial chain through the long-term relationship with CSOT (which is a major panel supplier in the PRC) to capitalise on opportunities arising from the revolution of the industry and to establish an eco-system enterprise based on display business" and "consolidating and expanding our existing display business."

15.    The 2025 Report also discloses that various TCL entities share directors and executives, further evidencing that TCL is a global unitary business venture and interrelated group of companies, for example, the following Executive Directors of TCL Electronics:

- Ms. DU Juan "is the chairperson of the Board, an executive Director, a member of the Nomination Committee, the chairperson of the Strategy Committee and ESG Committee and a director of a subsidiary of the Company" and "also a director and the CEO of TCL Industries Holdings";
- Mr. ZHANG Shaoyong "is an executive Director, CEO, a member of the Strategy Committee and ESG Committee, the general manager of the pan-smart screen business unit and a director in various subsidiaries of the Company" and "also currently a director and senior vice president of TCL Industries Holdings";
- Mr. PENG Pan "is an executive Director, CFO, a member of the Nomination Committee, Strategy Committee and ESG Committee and a director of various

subsidiaries of the Company" and "is also the CFO of TCL Industries Holdings and chairperson of Guangdong TCL Smart Home Appliances Co., Ltd. (002668. SZ)"; and

- Mr. SUN Li "is an executive Director" and "also the CTO of TCL Industries Holdings."

16.     In its own annual report, TCL Industries Holdings states that (1) "the Company has maintained a clear and consistent strategic focus on its smart devices business, advancing a diversified product portfolio under its globally leading, TV-centred strategy," (2) "This approach has enabled TCL to secure industry-leading positions across both domestic and international markets," (3) "In 2024, TCL TV's global market share in terms of shipment rose by 1.4 percentage points year-on-year to 13.9%, ranking among the top two globally," (4) "In 2024, global shipment of TCL TV expanded by 14.8% year-on-year, reaching 29 million sets — representing a historical performance benchmark for the Company," where "TCL's global TV market share in terms of shipment rose by 1.4 percentage points to 13.9%, ranking amongst the top two global TV brands and substantially exceeding aggregate industry average," (5) "The Company has implemented a deliberate internationalisation strategy, establishing a sophisticated global supply chain infrastructure," and (6) "With a workforce exceeding 70,000 professionals across Asia, Americas, Europe and Oceania, TCL Industries maintains worldwide research and development institutions and sales networks spanning more than 80 countries and regions."[5]

## PATENTS IN SUIT

17.     Malikie is the assignee of and owns all right, title, and interest in and to U.S. Patent Nos. 7,453,856 (the "'856 Patent"); 7,747,934 (the "'934 Patent"); 10,778,989 (the "'989 Patent"); and 8,347,025 (the "'025 Patent") (collectively, the "Asserted Patents"). KPI is the beneficiary of

---

[5] *See* TCL Industries 2024 Annual Report.

a trust of which Malikie is the trustee and holds, owns, and asserts the Asserted Patents for the benefit of KPI.

18.     BlackBerry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to wireless communications, video decoding, and secure device boot processes. Some of these groundbreaking inventions are described and claimed in the Asserted Patents. The '856 and '934 Patents disclose and claim inventions related to novel and unconventional wireless communications technology that are IEEE 802.11 standard-essential (Wi-Fi). *See* Exs. A-B. The '989 Patent discloses and claims inventions relating to novel and unconventional video decoding using template-based rolling intra prediction, a technique now mandated by the AV1 video coding specification. *See* Ex. C. The '025 Patent discloses and claims inventions relating to a novel and unconventional memory controller interface, including a method for write-protecting memory based on boot code having a predetermined signature, a technique used in verified boot processes on modern smart television platforms. *See* Ex. D.

19.     The '856 Patent, entitled "Method, apparatus, and communications interface for sending and receiving data blocks associated with different multiple access techniques," was duly and lawfully issued on November 18, 2008. A true and correct copy of the '856 Patent is attached hereto as **Exhibit A**.

20.     The '934 Patent, entitled "Method for selecting low density parity check (LDPC) code used for encoding of variable length data," was duly and lawfully issued on June 29, 2010. A true and correct copy of the '934 Patent is attached hereto as **Exhibit B**.

21.     The '989 Patent, entitled "Rolling intra prediction for image and video coding," was duly and lawfully issued on September 15, 2020. A true and correct copy of the '989 Patent is attached hereto as **Exhibit C**.

7

22.    The '025 Patent, entitled "Memory controller interface," was duly and lawfully issued on January 1, 2013. A true and correct copy of the '025 Patent is attached hereto as **Exhibit D**.

<u>**WI-FI STANDARD AND FRAND OBLIGATIONS**</u>

23.    The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association whose activities span a broad range of disciplines, including telecommunications. As part of its activities, the IEEE develops and publishes industrial standards, including standards pertaining to wireless communications.

24.    The IEEE-Standards Association (SA) operates within the IEEE and develops global standards in various industries, including Wi-Fi (802.11) standards. The IEEE 802.11 standards, developed by the IEEE-SA, provide a set of media access control (MAC) and physical layer (PHY) specifications for implementing Wi-Fi. The IEEE-SA requires participants to commit to abide by their Intellectual Property Rights ("IPR") policies, which set forth the rights and obligations of their members. For example, members are required to disclose intellectual property rights that disclose standard essential and potentially standard essential patents and patent applications relevant to IEEE standards. Further, the IEEE requires members disclosing IPR to indicate, via a Letter of Assurance ("LOA"), whether they will commit to granting implementer members a license under terms that are Fair, Reasonable, and Non-Discriminatory ("FRAND").

25.    BlackBerry has been an active participant in the IEEE's development of industry standards, including many of the 802.11 standards. On numerous occasions, BlackBerry notified the IEEE in public LOAs that its patents could include Essential Patent Claims with respect to at least the IEEE 802.11-2102, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, 802.11ae, and 802.11.2 standards.

8

BlackBerry further indicated that it was willing to grant a license to patents that could include Essential Patent Claims under terms that are FRAND.

26.     The IEEE Patent Policy makes clear that FRAND negotiations require a reciprocal duty of the SEP holder (Submitter) and licensee (Applicant) to engage in good faith negotiations without unreasonable delay, or alternatively, litigate. Section 6.2 of the current IEEE SA Standards Board Bylaws states:

> The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate … over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate….

### MALIKIE'S COMMUNICATIONS WITH TCL AND SATISFACTION OF ITS FRAND OBLIGATIONS

27.     Malikie has repeatedly offered TCL the chance to license its patents, including the Asserted Patents. In a letter dated October 9, 2023 (addressed to Mr. Lawrence Wu, Chief Intellectual Property Officer of TCL Industries Holdings Corporation), Malikie notified TCL of the Malikie patent portfolio, including patents believed to be essential to various 3GPP and 802.11x standards, and that TCL required a license for various patents. On October 26, 2023, TCL's IP Legal Counsel, Mr. Leo Meng, acknowledged receipt of the letter on behalf of TCL and represented that TCL "always respects IPR and is willing to negotiate SEP license under FRAND terms." In a letter dated October 1, 2024, Malikie identified specific patents that it believed were infringed by TCL televisions, including the '989 and '025 Patents, and provided TCL with exemplary claim information for those patents. In a letter dated May 22, 2025, Malikie provided an updated list of Wi-Fi patents and relevant infringing TCL television products. In a letter dated September 4, 2025, Malikie identified additional patents, including the '856 and '934 Patents, for which Malikie believed a license was required. Malikie has had additional communications with

TCL concerning Malikie's patents, including detailed claim charts and patent-specific infringement analyses, and TCL has provided feedback on certain of those analyses.

28.    Malikie also offered TCL the chance to license its Standard Essential Patents (SEPs), including those covering IEEE 802.11 standards that it acquired from BlackBerry, on FRAND terms. Beginning with its first letter on October 9, 2023 (including as discussed above), Malikie notified TCL of its portfolio, including various Wi-Fi SEP patents, and offered to license those patents on FRAND terms. In subsequent letters (including dated October 1, 2024, May 22, 2025, and September 4, 2025), Malikie provided TCL with detailed lists of Wi-Fi SEP patents, identified specific infringing TCL television products and exemplary infringed claims, and provided claim charts demonstrating infringement.

29.    Despite Malikie's repeated efforts to conduct good-faith licensing discussions with TCL over the past two years, including the provision of multiple notice letters, claim charts, and patent-specific analysis, TCL has not taken a license, has not negotiated in good faith, and instead continues to make use of Malikie's patented technology without authorization. Throughout the years of licensing discussions, TCL failed to provide a single counteroffer. Malikie is therefore left with little choice but to bring this action to enforce its rights as the owner of valid and valuable patents that TCL is willfully infringing.

## JURISDICTION AND VENUE

30.    Plaintiffs incorporate by reference paragraphs 1-29 herein.

31.    This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.,* including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

32.     This Court has general and specific personal jurisdiction over TCL, due at least to its continuous presence in, and systematic contact with, this judicial district by TCL, directly and/or through its agents, subsidiaries, and intermediaries. TCL is subject to this Court's jurisdiction pursuant to due process at least as a result of TCL's substantial business in Texas and this judicial District, including at least a part of its infringing activities, and engaging in persistent conduct and deriving substantial revenue from goods and/or services provided in and from Texas, including this District, directly and/or through its agents, subsidiaries, and intermediaries.

33.     This Court has further general and specific personal jurisdiction over TCL because TCL, directly or through intermediaries, including distributors, retailers, and others, has committed and continues to commit acts within this District giving rise to this action by, among other things, making, using, offering for sale, and/or selling products and/or services that infringe one or more of the Asserted Patents.

34.     On information and belief, TCL uses, sells, offers to sell, and/or imports infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable one. On information and belief, TCL has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

35.     TCL also purposefully directs or controls the sale of accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products will be so sold in this District. TCL purposefully places the accused products—whether by itself or through agents, subsidiaries, or intermediaries—into an international supply chain, knowing that the accused products will be sold

11

in the United States, including Texas and in this District. Therefore, TCL also facilitates the sale of the accused products in Texas.

36.    In particular, TCL took and continues to take active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringes the Asserted Patents. Such steps include, among other things, making or selling the accused products outside of the United States for importation into and/or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to import, sell, and/or offer to sell the accused products in an infringing manner.

37.    TCL also utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant accused products directly to consumers and other users in the United States, including providing links via its website to online stores, retailers, and resellers, offering such products and related services for sale (including authorized retailers such as Best Buy, Walmart, and Target). Such a presence further demonstrates at least the distribution, sale, offer for sale, and use (including by inducement) of accused products in Texas, including in this District. For example, TCL sells accused products through authorized retailers including Best Buy, Walmart, and Target, among others, all of which have retail locations and/or deliver products in this District.

38.    Plaintiffs' causes of action arise, at least in part, from Defendants' contacts with and activities in and/or directed to this District and the State of Texas.

39.    Venue is proper in this judicial District under 28 U.S.C. §§ 1391(b)-(c) because, among other things, Defendants are foreign corporations and venue is proper as to a foreign

defendant in any judicial district pursuant to 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

40.    TCL is doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this judicial District and elsewhere in the United States and have committed acts of infringement in this District.

**FIRST CLAIM**
**(Infringement of the '856 Patent)**

41.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1-40 of their Complaint.

42.    TCL has been on notice of the '856 Patent and a specific factual basis for its infringement of the '856 Patent since at least September 4, 2025.

43.    TCL has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the '856 Patent, by making, using, testing, selling, offering for sale, and/or importing IEEE 802.11 standard compliant devices, for example, using carrier sense multiple access (CSMA) and downlink multiuser-multiple input/multiple output (DL MU-MIMO) (excluding any products licensed under the '856 Patent), such as TCL smart televisions and tablets as exemplified in Exhibit E hereto (collectively, the "'856 Accused Products"). An exemplary claim chart concerning one way in which TCL infringes claim 14 of the '856 Patent is attached as **Exhibit E**.

44.    TCL has also indirectly infringed, and continues to indirectly infringe, the '856 Patent under 35 U.S.C. § 271(b) and (c).

45.    TCL has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '856 Patent, and continues to do so, by, for example,

selling and offering access to devices compliant with IEEE 802.11 standards. TCL knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 14 of the '856 Patent by, for example, having sold, offered for sale, and encouraged customers to use at least some or all of the '856 Accused Products. TCL, for example, provides instructions on how to access and use the infringing Wi-Fi features. *See, e.g.,* TCL Wi-Fi setup and connection instructions.[6]

46.    TCL has also contributed to the direct infringement of at least claim 14 of the '856 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '856 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, TCL provided, owned, operated, sold, offered to sell, and/or imported infringing IEEE 802.11-compliant wireless connectivity modules in the '856 Accused Products that were not a staple article of commerce and were incapable of substantial noninfringing use.

47.    TCL's ongoing infringement is willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM
### (Infringement of the '934 Patent)

48.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1-47 of their Complaint.

49.    TCL has been on notice of the '934 Patent and a specific factual basis for its infringement of the '934 Patent since at least September 4, 2025.

---

[6] https://support.tcl.com/common-questions-TVs/how-do-i-connect-my-tcl-tv-to-the-internet.

50.    TCL has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 1-4 of the '934 Patent, by making, using, testing, selling, offering for sale, and/or importing IEEE 802.11 standard compliant devices, for example, with low-density parity-check (LDPC) operation (excluding any products licensed under the '934 Patent), such as TCL smart televisions incorporating Wi-Fi modules as exemplified in Exhibit F hereto (collectively, the "'934 Accused Products"). An exemplary claim chart concerning one way in which TCL infringes claims 1-4 of the '934 Patent is attached as **Exhibit F**.

51.    TCL has also indirectly infringed, and continues to indirectly infringe, the '934 Patent under 35 U.S.C. § 271(b) and (c).

52.    TCL has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 1-4 of the '934 Patent, and continues to do so, by, for example, selling and offering access to IEEE 802.11 standard compliant devices with low-density parity-check (LDPC) operation. TCL knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claims 1-4 of the '934 Patent by, for example, having sold, offered for sale, and encouraged customers to use at least some or all of the '934 Accused Products. TCL, for example, provides instructions on how to access and use the infringing Wi-Fi features including in advertising, user manuals, and instructions. *See, e.g.,* TCL Wi-Fi setup and connection instructions.[7]

53.    TCL has also contributed to the direct infringement of at least claims 1-4 of the '934 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '934 Patent, a material part of a claimed invention, where the material part is not

---

[7] https://support.tcl.com/common-questions-TVs/how-do-i-connect-my-tcl-tv-to-the-internet.

a staple article of commerce and is incapable of substantial noninfringing use. For example, TCL provided, owned, operated, sold, offered to sell, and/or imported infringing IEEE 802.11-compliant wireless connectivity modules in the '934 Accused Products that were not a staple article of commerce and were incapable of substantial noninfringing use.

54.    TCL's ongoing infringement is willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

**THIRD CLAIM**
**(Infringement of the '989 Patent)**

55.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1-54 of their Complaint.

56.    TCL has been on notice of the '989 Patent and a specific factual basis for its infringement of the '989 Patent since at least October 1, 2024.

57.    TCL has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '989 Patent, by making, using, testing, selling, offering for sale, and/or importing TCL smart televisions that support AV1 video decoding (collectively, the "'989 Accused Products"). An exemplary claim chart concerning one way in which TCL infringes claim 1 of the '989 Patent is attached as **Exhibit G**.

58.    TCL has also indirectly infringed, and continues to indirectly infringe, the '989 Patent under 35 U.S.C. § 271(b) and (c).

59.    TCL has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '989 Patent, and continues to do so, by, for example, selling and offering access to devices that support AV1 video decoding. TCL knowingly, intentionally,

and actively aided, abetted, and induced others to directly infringe at least claim 1 of the '989 Patent by, for example, having sold, offered for sale, and encouraged customers to use at least some or all of the '989 Accused Products to stream AV1 encoded content from various services. TCL, for example, advertises 4K streaming capabilities in its product marketing materials and provide instructions on how to access streaming services on the '989 Accused Products.

60.    TCL has also contributed to the direct infringement of at least claim 1 of the '989 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '989 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, TCL provided, owned, operated, sold, offered to sell, and/or imported AV1-capable video decoding hardware in the '989 Accused Products that were not a staple article of commerce and were incapable of substantial noninfringing use.

61.    TCL's ongoing infringement is willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

### FOURTH CLAIM
**(Infringement of the '025 Patent)**

62.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1-61 of their Complaint.

63.    TCL has been on notice of the '025 Patent and a specific factual basis for its infringement of the '025 Patent since at least October 1, 2024.

64.    TCL has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 12 of the '025 Patent, by making, using, testing, selling, offering for sale, and/or importing TCL smart

17

televisions that implement Android Verified Boot, including write-protecting memory based on boot code having a predetermined signature (collectively, the "'025 Accused Products"). An exemplary claim chart concerning one way in which TCL infringed claim 12 of the '025 Patent is attached as **Exhibit H**.

65.    TCL has also indirectly infringed, and continues to indirectly infringe, the '025 Patent under 35 U.S.C. § 271(b) and (c).

66.    TCL has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 12 of the '025 Patent by, for example, selling and offering access to devices implementing Android Verified Boot. TCL knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 12 of the '025 Patent by, for example, having sold, offered for sale, and encouraged customers to use at least some or all of the '025 Accused Products, including providing instructions and user support for use and operation of the same.

67.    TCL has also contributed to the direct infringement of at least claim 12 of the '025 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '025 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, TCL provided, owned, operated, sold, offered to sell, and/or imported TCL smart televisions that implement Android Verified Boot and components thereof that were not a staple article of commerce and were incapable of substantial noninfringing use.

68.    TCL's infringement was willful through expiration of the '025 Patent in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

18

**PRAYER FOR RELIEF**

WHEREFORE, Malikie and KPI pray for judgment against TCL as follows:

A.      That TCL has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the '856, '934, and '989 Patents;

B.      That TCL's infringement of the Asserted Patents has been willful, and its ongoing infringement of the '856, '934, and '989 Patents is willful;

C.      That TCL pay Malikie and KPI damages adequate to compensate for its past infringement of each of the Asserted Patents, as well as present and future infringement of the '856, '934, and '989 Patents, together with interest and costs under 35 U.S.C. § 284;

D.      That TCL pay prejudgment and post-judgment interest on the damages assessed;

E.      That TCL pay Malikie and KPI enhanced damages pursuant to 35 U.S.C. § 284;

F.      That TCL be ordered to pay ongoing royalties for any post-judgment infringement of the '856, '934, and '989 Patents;

G.      That this is an exceptional case under 35 U.S.C. § 285, and that TCL pay Malikie and KPI's attorneys' fees and costs in this action; and

H.      That Malikie and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demands a trial by jury on all issues triable to a jury.

19

Respectfully submitted,

/s/ *Patrick Colsher by permission Claire Abernathy Henry*
Patrick Colsher – LEAD ATTORNEY
Khue V. Hoang
**REICHMAN JORGENSEN
      LEHMAN & FELDBERG LLP**
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
khoang@reichmanjorgensen.com

Matthew G. Berkowitz
Michael Caulkins
**REICHMAN JORGENSEN
      LEHMAN & FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
mcaulkins@reichmanjorgensen.com

*Of Counsel*:

Claire Abernathy Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy. Longview, TX 75604
Tel: (903) 757-6400
claire@millerfairhenry.com

*Attorneys for Plaintiffs Malikie Innovations Ltd.
and Key Patent Innovations Ltd.*

20